UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RACHEL NUFFER,

        Plaintiff,                    Case No. 1:20-cv-10935

v.                                            Honorable Thomas L. Ludington
                                                Magistrate Judge Patricia T. Morris

AETNA LIFE INSURANCE COMPANY,

        Defendant,
_____/

**OPINION AND ORDER SUSTAINING AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT, DENYING DEFENDANT'S MOTION FOR JUDGMENT, AND REMANDING CASE TO AETNA FOR FULL AND FAIR REVIEW**

        Plaintiff Rachel Nuffer ("Nuffer") awoke on November 26, 2016, with a stunning migraine. Her pain was so intense that she raced to the emergency room, where doctors administered a "migraine cocktail." Nuffer's unexpected trip to the hospital marked the beginning of her long journey for medical relief—and disability benefits.

        In April 2020, Nuffer brought this action under the civil enforcement provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. Nuffer seeks to reinstate long-term disability benefits that were provided to her under a group insurance policy purchased by her employer, the Dow Corning Corporation ("Dow Corning"). Defendant Aetna Life Insurance Company ("Aetna") administers the policy. Nuffer claims that she is disabled by persistent migraines and associated symptoms.

        The matter was referred to Magistrate Judge Patricia T. Morris. After considering the parties' cross-motions for summary judgment, Judge Morris issued a Report and

Recommendation, recommending that judgment be entered for Aetna. Nuffer timely filed objections.

After reviewing Judge Morris's Report and Recommendation under Federal Rule of Civil Procedure 72, this Court finds that Aetna did not provide Nuffer with the full and fair review required by 29 U.S.C. § 1133. Accordingly, this matter will be remanded to Aetna for a full and fair review consistent with this Opinion.

I.

From January 2008 until the onset of her migraines in November 2016, Nuffer worked for Dow Corning as a "[p]roduction [o]perator," driving trucks and operating other heavy equipment. ECF No. 29 at PageID.1275. As a benefit of her employment, Nuffer participated in Dow Corning's Long-Term Disability Benefit Plan (the "Plan"), which Aetna administers. *Id.*

The Plan determines long-term benefits using a two-tiered test: the "Test of Disability."[1] *See* ECF No. 12-5 at PageID.1053 (Administrative Record) (under seal). For the first 24 months, benefits are payable so long as the participant cannot perform her "own occupation" and earns

---

[1] The Plan reads:

> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any date that:
>
> - You cannot perform the material duties of your own occupation solely because of an illness, injury, or disabling pregnancy-related condition; and
>
> - Your earnings are 80% or less of your adjusted predisability earnings.
>
> After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition.

ECF No. 12-5 at PageID.1053.

"80% or less of [her] adjusted predisability earnings." *Id.* (emphasis omitted). After the first 24-month period, benefits are payable only if the participant cannot perform "any reasonable occupation," which is defined as "any gainful activity: [f]or which [the participant] [is], or may become, fitted by education, training, or experience; and [w]hich results in or can be expected to result in, an income of more than 80% of your adjusted predisability earnings." *Id.* at PageID.1072 (emphasis omitted).

Nuffer applied for long-term benefits on April 12, 2017, at the age of 44. *See* ECF No. 29 at PageID.1279. Her application relied largely on the supporting statement of her internist,[2] LaTonya Thomas, M.D. *See* ECF No. 12-4 at PageID.839–843. According to a March 24, 2017 statement, Dr. Thomas diagnosed Nuffer with "concern of [sic] cervical disc radiculopathy," "blurred [and] double vision," and "severe [non-intractable] headache." *Id.* Nuffer was prescribed pain medication to treat the headaches, which Dr. Thomas noted could cause "drowsiness" and other "unpredictable symptoms." *Id.* at PageID.841. Dr. Thomas also identified various functional impairments: Nuffer could never climb, crawl, or kneel and could only "occasionally" lift, pull, push, reach, carry, bend, twist, or grossly or finely manipulate her hands. *Id.* at PageID.843. Dr. Thomas ultimately concluded that Nuffer could not work. *Id.*

Aetna approved Nuffer's claim the following month and began paying benefits on May 31, 2017. *Id.* The letter approving Nuffer's claim did not provide a specific rationale. But Aetna now claims that it approved Nuffer's application only because "she was unable to drive trucks and forklifts as required by her 'own occupation' while taking pain medication that purportedly made her groggy." *See* ECF No. 21 at PageID.1171.

---

[2] An internist is a doctor who "special[izes] in internal medicine." *See Internist*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/internist [https://perma.cc/964M-2FYC].

Aetna terminated Nuffer's benefits by letter at the expiration of the initial 24-month period on May 31, 2019. ECF No. 29 at PageID.1282. Aetna cited the failure of Nuffer's providers to produce medical records as requested. *See* ECF No. 12-5 at PageID.1002 ("Based on the lack of current medical documentation supporting restrictions and limitations precluding you from performing your own occupation or any occupation, we have determined you no longer meet the definition of disability . . . .").

Aetna also faulted Nuffer for failing to apply for Social Security Disability Income (SSD) benefits. *See id.* at PageID.1003 (stating that Nuffer "[never] attempted to complete an application for SSD benefits."). When her claim was first approved, Aetna advised Nuffer that she would have to apply for SSD benefits. *See* ECF No. 12-4 at PageID.872. Aetna even offered to refer Nuffer's case to Allsup, Inc., which is Aetna's cost-free "Social Security advocacy service." *See id.*

Shortly after Aetna terminated Nuffer's benefits, she submitted a hand-written appeal, denying many of the facts alleged in Aetna's termination letter. *See* ECF No. 12-3 at PageID.600-01. Most notably, Nuffer claimed that she had been approved for SSD benefits with the help of Allsup, and that she had submitted release forms for her medical records at Aetna's request. *Id.*

Nuffer was correct, at least with respect to the SSD benefits. The Social Security Administration (SSA) determined that Nuffer was disabled as of November 25, 2016, and it sent her an award notice on December 19, 2017. *See* ECF No. 12-4 at PageID.695. The SSA made its determination at the initial review stage, apparently finding no need for an evidentiary hearing.

On June 17, 2019, Aetna reversed its decision and reopened Nuffer's case. *See* ECF No. 12-5 at PageID.1011. The letter stated that Aetna was reopening her claim because of "additional medical records that were received at the time of the appeal."[3] *Id.*

But Nuffer's success was short-lived. On July 3, 2019, Aetna sent another letter to Nuffer stating that it had, once again, decided to terminate her benefits. *Id.* at PageID.1015. The letter claimed that Nuffer could perform full-time "sedentary" work.[4] *Id.* Accordingly, Aetna's letter identified four jobs that it claimed were "appropriate" for Nuffer's "physical limitations, education and work history," and offered wages "equal to or greater than 60% of [her] adjusted pre-disability earnings": "Taxicab Starter," "Charge-Account Clerk," "Reservation Clerk," and "Claims Clerk II."[5] *Id.* The letter also addressed Nuffer's approval for SSD benefits, stating that Aetna had "reviewed and considered the information" in Nuffer's Social Security file and found it to be "significantly different" from the updated information that Aetna possessed. *Id.* at PageID.1016.

After Nuffer filed a second appeal, Aetna hired an independent medical consultant, Mostafa Farache, M.D., to review Nuffer's medical file. *See* ECF No. 29 at PageID.1285. Dr. Farache concluded that Nuffer was able to "perform tasks on a predictable and sustainable basis for 8 hours" with "[d]aily accommodations like a [30-minute] break . . . to administer [over-the-counter] pain medications." *See* ECF No. 12-2 at PageID.331. Dr. Farache also opined that Nuffer's complaints lacked "objective findings" in support. *Id.*

---

[3] Aetna claims that the additional medical records came from two of Nuffer's providers, Wayne Cornblath, M.D. and Elizabeth Dunn, M.D., who both faxed records to Aetna after it terminated Nuffer's benefits. *See* ECF No. 21 at PageID.1183.

[4] Judge Morris thoroughly described Nuffer's medical records in her Report. *See* ECF No. 29 at PageID.1277–86. In sum, Nuffer's subjective complaints have largely remained consistent over the years, though multiple neurologists have been unable to identify any abnormality.

[5] Notably, Aetna applied a 60% earnings standard, rather than the 80% standard called for by the Plan. *See* ECF No. 12-5 at PageID.1081.

On October 1, 2019, Aetna sent a letter stating that it had reaffirmed its decision to terminate Nuffer's benefits. *See* ECF No. 12-5 at PageID.1042.

Several months later, Nuffer brought this action under 29 U.S.C. § 1132, seeking to reinstate her benefits. *See* ECF No. 1. She argued that, *inter alia*, Aetna failed to consider the SSA's disability determination and thereby deprived her of the "full and fair review" required by 29 U.S.C. § 1133.[6] *See* ECF No. 20 at PageID.1157-1158.

After reviewing the administrative record de novo, Judge Morris recommended that judgment be entered for Aetna. *See* ECF No. 29. Regarding Nuffer's Social Security file, Judge Morris found that "given the timeframe of the Social Security decision, [Nuffer did] not articulate the relevance of that decision or the evidence that underlies it, to [Aetna's decision] here which is based on more recent evidence." *See* ECF No. 29 at PageID.1297.

## II.

A party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are filed, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). De novo review requires at least a review of the evidence before the magistrate judge; the court may not act solely based on a magistrate judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court is free

---

[6] As requested by Judge Morris's Scheduling Order, Nuffer also filed a "statement of procedural challenge," *see* ECF No. 16, which was intended to clarify whether she was challenging Aetna's claims procedure, *see* ECF No. 11 at PageID.33–34. Confusingly, Nuffer's statement of procedural challenge stated that "she assert[ed] no procedural challenge." *See* ECF No. 16 at PageID.1116. Nuffer's Complaint, however, specifically alleged a violation of "ERISA's claims regulation." *See* ECF No. 1 at PageID.4. The significance of Nuffer's procedural statement is discussed later in this Opinion. *See* discussion *infra* note 7.

to accept, reject, or modify the magistrate judge's findings and recommendations. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

### III.

Nuffer raises three objections to Judge Morris's Report and Recommendation: (1) Judge Morris relied on "post hoc rationale" to excuse Aetna's use of the 60% earnings standard[7]; (2) Judge Morris improperly excused Aetna's failure to consider Nuffer's Social Security file; and (3) Judge Morris incorrectly found that Nuffer did not satisfy the Test of Disability. *See* ECF No. 31.

This Court agrees with Nuffer's second objection and will, therefore, remand this matter to Aetna for a full and fair review consistent with this Opinion.

Under section 503 of ERISA, a plan administrator must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). To ensure that a full and fair review is conducted, section 503 regulations require a plan administrator to consider any disability determination made by the SSA and explain why it agrees or disagrees:

> (j) Manner and content of notification of benefit determination on review. The plan administrator shall provide a claimant with written or electronic notification of a plan's benefit determination on review. . . . In the case of an adverse benefit determination, the notification shall set forth, in a manner calculated to be understood by the claimant—

\*\*\*

---

[7] Aetna concedes that it erred in using the 60% earnings standard to determine whether Nuffer could perform any "reasonable occupation." *See* ECF No. 32 at PageID.1327-1328. As discussed previously, the Plan defines a reasonable occupation as any gainful activity that results in "an income of *more than 80%* of [the claimant's] adjusted predisability earnings." *See* ECF No. 12-5 at PageID.1071. (emphasis added). Nonetheless, Aetna successfully argued in the proceedings before Judge Morris that its error was harmless because there were multiple occupations suitable to Nuffer within the correct income range. *See* ECF No. 26 at PageID.1248; ECF No. 29 at PageID.1292 (concluding that "[a] [r]emand to correct [Aetna's computational error] would not change the result of this case"). For reasons discussed below, this Court will not reach the issue of whether Aetna's error was harmless.

> (6) In the case of an adverse benefit decision with respect to disability benefits—
>
> (i) A discussion of the decision, including an explanation of the basis for disagreeing with or not following:
>
> \*\*\*
>
> (C) A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration . . . .

29 C.F.R. § 2560.503-1(j). Although Nuffer has challenged the fairness of Aetna's review since the beginning of the case,[8] neither party has articulated the correct standard of review for such a challenge.

When the plan administrator's substantive decision to terminate benefits is at issue, the courts must review the record de novo and determine whether the decision was correct. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). But when the plan administrator's compliance with 29 U.S.C. § 1133 is at issue, courts must apply the "substantial compliance" test.[9] *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005) ("[The

---

[8] *See, e.g.*, ECF Nos. 1 at PageID.4; 20 at PageID.1157; 25 at PageID.1212. Nuffer's failure to specifically cite 29 U.S.C. § 1133 or the regulations thereunder does not preclude this Court from reviewing Aetna's claims procedure. *See Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503, 505 (6th Cir. 2014) (rejecting argument that failure of claimant "to specifically reference [§ 1133] and [accompanying] regulation[s]" precluded review of plan administrator's claims procedure where claimant raised the issue in the district court). Similarly, Nuffer's confusing procedural-challenge statement should not be construed as waiving any challenge to Aetna's claims procedure. Nuffer's complaint specifically alleges that Aetna violated "ERISA's claims regulation," *see* ECF No. 1 at PageID.4, and Aetna has never raised the issue of waiver, *cf. Leffew v. Ford Motor Co.*, No. 06-CV-12202-DT, 2007 WL 325766, at *9 (E.D. Mich. Jan. 31, 2007) (finding that statement disclaiming procedural challenge constituted waiver where "complaint was insufficient to put the Defendants on notice that Plaintiff intended to pursue a procedural challenge"), *aff'd in relevant part*, 258 F. App'x 772 (6th Cir. 2007).

[9] Other courts in this circuit have recognized the same distinction. *See, e.g.*, *Chaborek v. Ford Component Sales LLC*, No. 2:18-CV-12763-TGB, 2019 WL 2410718, at *2 (E.D. Mich. June 7, 2019) (noting that plan administrator's substantive benefit determination and compliance with § 1133 "receive different standards of review"); *see also Houston v. Unum Life Ins. Co. of Am.*, 246 F. App'x 293, 299 (6th Cir. 2007) (distinguishing between whether the "procedure employed by a

Sixth Circuit] has adopted a 'substantial compliance' test in deciding whether denial notices meet the requirements of § 1133" (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 460 (6th Cir. 2003))).

The basic inquiry is whether the plan administrator "fulfilled the essential purpose of § 502–notifying [the claimant] of their reasons for denying [her] claims and affording [her] a fair opportunity for review." *Id.* (quoting *Marks*, 342 F.3d at 460). "In making that assessment, the court must consider all the communications between the administrator and plan participant." *Id.* If the plan administrator did not substantially comply with § 1133, "reversal and remand . . . is ordinarily appropriate." *Id.* But "a remand is not required if it would represent a useless formality." *Id.* (quoting *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996)).

Having carefully reviewed the record, this Court finds that Aetna's communications with Nuffer did not substantially comply with 29 U.S.C. § 1133.

When Aetna first terminated Nuffer's benefits, it claimed that she had failed to complete an application for SSD benefits. *See* ECF No. 12-5 at PageID.1003. That was not true. Not only had Nuffer been approved for SSD benefits with the help of Allsup—Aetna's preferred "Social Security advocacy service"—Aetna had received notice of the SSA's decision and began calculating the amount of overpayment to Nuffer as early as January 2018. *See* ECF No. 12-1 at PageID.52, 150–51. But rather than correcting course and reviewing Nuffer's Social Security file, Aetna aggravated its error by misleading Nuffer with a second termination letter. That letter stated:

> We have also reviewed and considered the information provided relating to your approval for SSD benefits. This review shows that the information that was relied on to approve your claim for SSD benefits differs significantly from the information we now have concerning your claim. For this reason, we have given the fact that

---

plan administrator . . . meets the requirements of § 1133" and whether a plan administrator's decision was arbitrary and capricious).

> you are receiving SSD benefits little weight in our determination of whether you are eligible for LTD benefits under the plan.

ECF No. 12-5 at PageID.1016. Simply put, there is no evidence that Aetna "reviewed and considered" Nuffer's Social Security file or that the information therein "differ[ed] significantly" from the information available to Aetna.[10] Aetna essentially concedes this point, as it now argues that its failure to obtain Nuffer's Social Security file was excusable. *See* ECF No. 32 at PageID.1336. Aetna reasons that because it wrote to the SSA about Nuffer's Social Security file on May 23, 2019, and never received a response, it was "proper" to resolve Nuffer's appeal without considering the file. *See Id.* Aetna is mistaken.

First, Aetna's favorable account is belied by the timing of its letter to the SSA. The letter was sent a mere eight days before the first termination letter and over a year after Aetna learned about the SSA's determination. *See* ECF Nos. 12-1 at PageID.52; 12-5 at PageID.993. Aetna has offered no explanation for that delay.

Second, as Nuffer correctly notes, the SSA was not the only entity with access to her file. Indeed, Aetna could have requested Nuffer's Social Security file from Allsup, which appeared to remain in regular contact with Aetna during Nuffer's Social Security proceedings. *See, e.g.*, ECF No. 12-1 at PageID.52 (internal record of Allsup informing Aetna of SSD benefits award). Moreover, Nuffer signed a release in June 2017 authorizing Allsup to share her medical and Social Security information with Aetna. *See* ECF No. 12-4 at PageID.726.

Aetna also argues that Nuffer "consented" to Aetna's circumscribed review when she told an Aetna representative in August 2019 that she had "provided everything." *See* ECF No. 32 at

---

[10] This portion of the letter seems to have been carelessly copied from a template. In the sentence preceding the quoted passage, the phrase "We have also conducted [insert claim activity]" appears inexplicably. *See* ECF No. 12-5 at PageID.1016.

PageID.1336 (citing ECF No. 12-2 at PageID.286). But construing Nuffer's remark as "explicit consent" to forego the protection of § 1133 is patently unreasonable. *See id.* Nuffer likely believed that Aetna had already obtained her Social Security file. Indeed, Aetna's letter to the SSA included a signed release from Nuffer, dated May 26, 2017, allowing the SSA to release her "[c]omplete medical records from [her] claims folder(s)." *See* ECF No. 12-5 at PageID.994.

Aetna next argues, consistent with Judge Morris's Report, that Nuffer "failed to explain . . . how the SSA's approval of her claim based on outdated 2016 and 2017 medical records (which are contained in the administrative record) would satisfy her burden." *See* ECF No. 32 at PageID.1336. Respectfully, this Court disagrees.

Neither Nuffer nor Aetna was responsible for compiling the records submitted to the SSA. Therefore, neither can be sure of the exact contents of Nuffer's Social Security file. Nonetheless, Nuffer claims that her providers inadvertently faxed her records to the SSA, rather than to Aetna, raising the inference that Aetna never reviewed at least some material evidence. *See* ECF No. 31 at PageID.1314.

Aetna vigorously denies that claim yet presents no convincing evidence to the contrary. *See* ECF No. 32 at PageID.1338. For example, Aetna notes that most of Nuffer's providers successfully sent records to Aetna. *See* ECF No. 32 at PageID.1338. Aetna thus infers that Nuffer's claim that her medical records were inadvertently sent to the SSA is untrue: that she "fabricate[d]" her claim. *Id.* at PageID.1337. But Aetna later acknowledges that it never received Dr. Thomas's records, despite multiple attempts to contact her. *See Id.* at PageID.1338–39.

Ultimately, the record is too sparse to infer that Nuffer completely "fabricate[d]" her claim. *Id.* at PageID.1337. The stronger inference is that Aetna never reviewed at least some of the medical evidence in Nuffer's Social Security file.

Furthermore, given the stringency of the Social Security Act,[11] there is good reason to believe that at least some of the records in Nuffer's Social Security file weigh in favor of her ERISA claim. It is well-settled that an SSA determination of disability is highly relevant to a claim for disability benefits under an ERISA-governed plan. *See, e.g.*, *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005) ("[T]he SSA determination, at a minimum, provides support for the conclusion that an administrative agency charged with examining [the claimant's] medical records found, as it expressly said it did, objective support for [the treating physician's] opinion in those records."); *Force v. Ameritech Corp.*, 452 F. Supp. 2d 744, 750 (E.D. Mich. 2006) ("While the [SSA]'s decision is not binding on the Defendant, such a determination is highly relevant, and cannot simply be ignored." (internal citation omitted)), *aff'd*, 250 F. App'x 662 (6th Cir. 2007).

Aetna's reliance on *Cox v. Standard Ins. Co.*, 585 F.3d 295 (6th Cir. 2009), is misplaced. In *Cox*, the Sixth Circuit affirmed a plan administrator's termination of benefits despite the administrator's failure to consider the SSA's disability determination. *See id.* at 303. In reviewing the plan administrator's decision, the *Cox* court emphasized that the SSA made its determination "two years before" benefits were terminated. *See id.* But *Cox* was decided under the arbitrary and capricious standard, where the issue was whether the decision to terminate benefits "was the 'result of a deliberate principled reasoning process and [was] supported by substantial evidence.'" *Id.* at 302 (quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009)).

---

[11] To receive SSD benefits, an individual must prove that she is "under a disability." *See* 42 U.S.C. § 432(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). SSD claimants are also subject to the "five-step sequential evaluation process" set forth in the regulations. *See* 20 C.F.R. § 404.1520(a).

By contrast, the issue here is whether a remand would represent more than a "useless formality." *See McCartha*, 419 F.3d at 444. Simply stated, the Sixth Circuit's approval of a plan administrator's substantive decision, which the Sixth Circuit reviewed under "the least demanding form of judicial review," *see Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000), does not require this Court to overlook authority indicating that SSA determinations are "highly relevant," *see Force*, 452 F. Supp. 2d at 744.

This Court also declines to overlook *why* the records in Nuffer's Social Security file remain mysterious. Although Nuffer bears the burden of proving that she satisfies the Test of Disability, Aetna had a duty to provide her with a full and fair review. *See* 29 U.S.C. § 1133(2). And federal regulations *unequivocally* require such a review to include some discussion of any relevant Social Security determination. 29 C.F.R. § 2560.503-1(j)(6)(i)(C). Thus, requiring Nuffer to explain the contents of records that Aetna should have considered—records that Aetna falsely told her it *had considered*—would vitiate Aetna's duty under ERISA.

Based on the foregoing, this Court finds that Aetna did not substantially comply with the requirements of 29 U.S.C. § 1133. Given the likelihood that Nuffer's Social Security file includes material evidence, a remand to Aetna for further review is the appropriate remedy. *See McCartha*, 419 F.3d at 444.

Furthermore, because this matter is being remanded to Aetna for further review, Nuffer's two remaining objections will be overruled as moot. There is no reason for this Court to decide whether Aetna correctly applied the Plan or properly considered the available evidence when Aetna will be required to conduct a full and fair review on remand.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 31, are **SUSTAINED IN PART AND OVERRULED IN PART.** Plaintiff's objection that Aetna Life Insurance Company did not provide the full and fair review required by 29 U.S.C. § 1133 is **SUSTAINED**. Plaintiff's remaining objections are **OVERRULED AS MOOT**.

Further, it is **ORDERED** that Magistrate Judge Morris's Report and Recommendation, ECF No. 29, is **REJECTED**.

Further, it is **ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 20, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion is **GRANTED** as to the request to remand the case to Aetna Life Insurance Company for a full and fair review. Plaintiff's Motion is **DENIED** as to the request to reinstate disability benefits.

Further, it is **ORDERED** that Defendant's Motion for Judgment on the Administrative Record, ECF No. 21, is **DENIED**.

Further, it is **ORDERED** that this case is **REMANDED** to the Aetna Life Insurance Company for a full and fair review consistent with this Opinion.

Dated: September 24, 2021    s/Thomas L. Ludington
                              THOMAS L. LUDINGTON
                              United States District Judge